\*\* E-filed April 11, 2012 \*\*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In the Matter of:<br><br>Bank United F.S.B. (10061)<br><br>Coral Gables, Florida.<br>_____/ | No. C11-80223 EJD (HRL)<br><br>**ORDER DENYING MOTION TO QUASH A SUBPOENA DUCES TECUM** |

Michael Orlando moves to quash a subpoena issued by the Federal Deposit Insurance Corporation ("FDIC") in the matter of Bank United F.S.B. (10061) Coral Gables, Florida, pursuant to the Federal Deposit Insurance Act, 12 U.S.C. § 1818(n) and 12 U.S.C. 1821(d)(2)(I). The FDIC initiated an investigation into Bank United F.S.B. ("Bank United") after it failed in mid-2009. In November 2009, the FDIC issued an Order of Investigation to investigate, in part, any third parties who provided residential home loan mortgage application and closing services to Bank United, and to determine (1) "whether claims exist against any person as a result of any actions or failures to act with respect to Bank United," and (2) whether the FDIC should seek to avoid any transfers made by these persons and/or attach the assets of these persons." Dkt. No. 7 p. 3 ("Opp'n"); Goosenberg Decl. Exh. A ("Order of Investigation").

Pursuant to the Order of Investigation, the FDIC issued a subpoena duces tecum[1] on Union Bank, for the purpose of investigating "several arguably fraudulent mortgage finance transactions in

---

[1] Actually, the subpoena now at issue is the second subpoena that the FDIC issued on Union bank. The first subpoena misidentified the account number for the Crocker Financial account and sought documents connected only to the Graves loan. The only documents produced in response to the first

1 which purported borrowers were extended credit based on assets in checking and/or savings
2 accounts verified by Crocker Financial." Opp'n, p. 1. The FDIC identified at least two cases in
3 which Bank United extended loans to borrowers whose accounts were verified by an entity called
4 Crocker Financial. The first involved an individual named Jeff Graves, who obtained a loan from
5 Bank United to purchase real property (the "Graves loan"). The second involved an individual
6 known as "C.P.," who obtained a loan to refinance real property (the "C.P. loan"). Both transactions
7 occurred in mid-2007. Crocker Financial deposited the required escrow funds in both cases, and in
8 the Graves loan, listed itself as remitter, leading the FDIC to suspect that the borrowers were merely
9 strawmen who provided neither accurate account information nor the funds required to consummate
10 the transactions. Orlando admits that Crocker Financial is a fictitious business name and that the
11 Crocker Financial Bank United account (account number 1470027874) "was opened as his own
12 account," and which he used to "conduct[] a variety of financial transactions." Dkt. No. 1, p. 3
13 ("Motion"). It is not clear where Orlando/Crocker Financial's "clients" kept their checking and/or
14 savings account funds, if not in the Crocker Financial account(s) at Union Bank. Orlando argues that
15 the FDIC's only "legitimate" investigation concerns the Graves loan. Id.

16 The subpoena duces tecum seeks documents and records for (1) Union Bank account number
17 1470027874; (2) "any and all Crocker Financial Accounts;" and (3) any other accounts owned by
18 "any and all persons whose name appears on a signature card for" account 1470027874. Motion to
19 Quash, Exh. A, p. 7 ("Subpoena"). For each of these three categories, the subpoena seeks copies of
20 all signature cards, and evidence of all of the following from the period from May 1, 2006 through
21 June 1, 2008: all bank statements, all deposits of $7,500 or more, and all withdrawals of $7,500 or
22 more. Id.

23 Union Bank sent Orlando notice of the subpoena, and Orlando has moved to quash on the
24 grounds that the subpoena is overbroad and seeks the production of privileged and confidential
25 information that goes beyond the scope of the FDIC's investigation. FDIC has opposed the motion.
26 Orlando has replied, and the presiding Judge Davila gave the FDIC permission to file a sur-reply.

---

subpoena were two cashier's checks used in the Graves transaction. Once the FDIC realized its mistake re: the account number, it issued the instant subpoena.

2

Dkt. Nos. 9, 13. Orlando has responded to the sur-reply. Dkt. No. 14. Based on the moving papers and applicable authority, the court rules as follows.

**LEGAL STANDARD**

12 U.S.C. § 1821(d)(2) permits the FDIC to issue subpoenas when acting "as conservator, receiver, or exclusive manager and for purposes of carrying out any power, authority, or duty with respect to an insured depository institution (including determining any claim against the institution and determining and realizing upon any asset of any person in the course of collecting money due the institution)." 12 U.S.C. § 1818(n) delineates the subpoena power: the agency conducting the proceeding, examination, or investigation or considering the claim for insured deposits . . . shall have the power to . . . issue, revoke, quash, or modify subpenas and subpenas duces tecum.

Federal courts shall "accord[] substantial deference" to agency-issued subpoenas, and should uphold such a subpoena "so long as it is for a proper purpose, the information sought is relevant to that purpose, and the statutory procedures are observed." Federal Election Com. v. La Rouche Campaign, 817 F.2d 233, 234 (2d Cir. N.Y. 1987) (citing United States v. Powell, 379 U.S. 48, 57-58 (1964)). The court's role in a subpoena enforcement proceeding is "strictly limited to inquiring whether the above requirements have been met. . . . 'As long as the investigation is within the agency's authority, the subpoena is not too indefinite, and the information sought is reasonably relevant, the district court must enforce an administrative subpoena.'" United States v. Comley, 890 F.2d 539, 541 (1st Cir. Mass. 1989) (quoting EEOC v. Tempel Steel Co., 814 F.2d 482, 485 (7th Cir. 1987)).

"[O]nce an agency establishes that it has properly issued a subpoena, it 'should be enforced unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome.'" FDIC v. Garner, 126 F.3d 1138, 1145 (9th Cir. 1997) (quoting NLRB v. North Bay Plumbing, Inc., 102 F.3d 1005, 1007 (9th Cir. 1996)).

**DISCUSSION**

A. *Whether the FDIC Has Made A Prima Facie Showing for Upholding the Subpoena*

The FDIC has made a satisfactory showing for upholding the subpoena at issue. First, it has articulated a proper purpose for issuing the subpoena. Congress vested the FDIC with the authority

to issue subpoenas in connection with investigations into bank failures. See, e.g., 12 U.S.C. § 1818(n) (governing the use of subpoenas in investigations into "termination of insured depository institutions"). Here, the FDIC issued an Order of Investigation to investigate, in part, any third parties who provided residential home loan mortgage application and closing services to Bank United, and to determine (1) "whether claims exist against any person as a result of any actions or failures to act with respect to Bank United," and (2) whether the FDIC should seek to avoid any transfers made by these persons and/or attach the assets of these persons." Opp'n p. 3; Goosenberg Decl. Exh. A ("Order of Investigation"). Use of a subpoena duces tecum to achieve the Order of Investigation's goal, to determine whether a third party is liable for acts or omissions in connection with Bank United's financial activities, is expressly permitted pursuant to the FDIC's authority to oversee insured banks and investigate their failure when needed. See 12 U.S.C. § 1820(c); 12 U.S.C. § 1818(n); 12 U.S.C. § 1821(d)(2)(1). Thus, the FDIC has established a proper purpose.

Having made a prima facie showing of proper purpose, the FDIC must next show that the information sought by the subpoena is reasonably relevant to the purpose of the investigation, and that the subpoena itself is not too indefinite. The declaration of FDIC's counsel Jennifer Goosenberg states that the FDIC suspects that Crocker Financial fraudulently deposited escrow funds in at least two loan transactions—the Graves loan and the C.P. loan. Goosenberg Decl. ¶¶ 3-5. The subpoena duces tecum specifically seeks information about (1) who controls the Crocker Financial account(s), and (2) whether the funds for the loans at issue came from the named borrowers or some other individual(s). Because Crocker Financial is merely a fictitious business name, not a depository institution, its account records are the only means the FDIC can use to trace the source of funds used in the Graves and C.P. loans. In addition, the FDIC attests that the time period is reasonable because it will allow the FDIC to learn where the funds originated, when they appeared in the Crocker Financial account, and what occurred after they were deposited into escrow. There is little doubt that the subpoena is therefore reasonably relevant to the FDIC's ongoing investigation into what role these loans played in Bank United's failure.

Moreover, the subpoena defines each term used and lists each type of document requested clearly—all signature cards for Union Bank account number 1470027874, copies of all bank

statements for that account from May 1, 2006 through June 1, 2008, and copies of all deposits and withdrawals of $7,500 or more to that account from May 1, 2006 through June 1, 2008. In addition, it requests bank statements and deposits and withdrawals of $7,500 or greater for the same time period from any other "Crocker Financial Accounts" and any other account owned by any person whose name appears on a signature card for account number 1470027874. In short, the FDIC names one account number and two other categories of account, and requests specific documents from a specified time period for each account or type of account. There is nothing indefinite about such a request.

Accordingly, the court concludes that the FDIC has made a prima facie showing to support enforcement of the subpoena duces tecum.

B. *Orlando's Challenges to Enforcement of the Subpoena*

Orlando challenges the enforcement of the subpoena on two grounds. First, he argues that it is overbroad and unduly burdensome. Second, he argues that it seeks privileged information not relevant to the FDIC's investigation in violation of the Right to Financial Privacy Act.

1. Whether the Subpoena Is Overly Broad or Unduly Burdensome

Orlando argues that the subpoena request is overly broad and unduly burdensome. Dkt. No. 1, p. 4. In essence, his argument is that the subpoena is a fishing expedition because it requests documents covering a two-year period and seeks information not limited to the Graves loan. Motion, p. 4.

The party being investigated bears the burden of proving that the subpoena is overbroad or unduly burdensome. United States v. Stuart, 489 U.S. 353, 360 (U.S. 1989). Here, Orlando contends that the subpoena, which requests bank statements and deposit and withdrawals of $7,500 or more from at least one Crocker Financial bank account over a two-year period, is overbroad because it seeks information not relevant to the investigation of the Graves loan. Dkt. No. 1, p. 4. He summarily argues that the subpoena "is by its very terms in the nature of a fishing expedition." Id. However, the FDIC repeatedly states that its investigation covers multiple loans made to borrowers whose accounts were verified by Crocker Financial. See, e.g., Dkt. No. 8, p. 4. It has identified at least one other such transaction, the C.P. loan. It argues that the two-year time period is reasonable

because it spans approximately one year before and after the Graves and C.P. loans occurred, and would allow the FDIC to trace the funds used as down payments in those loans, as well as any significant subsequent activity. It also argues that because Crocker Financial is not a depository institution, subpoenaing its bank records (and those for other bank accounts held at Union Bank by holders of signature cards for the Crocker Financial account) is the only way for the FDIC to track deposits and withdrawals made by the alleged borrowers in the Graves and C.P. loans.

Orlando bears the burden of establishing that the subpoena is overbroad and unduly burdensome. His conclusory argument that the subpoena is overbroad because it seeks documents not directly related to the Graves loan does not satisfy the burden. Accordingly, the court cannot conclude that the subpoena is overly broad or unduly burdensome.

2.  <u>Whether the Subpoena Improperly Seeks Privileged Information</u>

Orlando also argues that the subpoena runs afoul of the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3401 *et seq.* because (1) the FDIC failed to provide notice of the subpoena directly to Orlando, and (2) the records are not relevant to a "legitimate law enforcement inquiry." Dkt. No. 1, p. 5. This argument also fails.

The RFPA provides specific procedures by which federal agencies may obtain access to bank records, and requires agencies to provide notice to consumers when their records will be produced. But, as the FDIC has correctly noted in its sur-reply, the RFPA exempts the FDIC from its consumer notice requirement. See Dkt. No. 13, p. 2 (citing 12 U.S.C. § 3413(b)). Orlando acknowledges this fact in his response to the sur-reply. Dkt. No. 14.

Finally, Orlando argues that, to the extent the FDIC seeks information beyond that directly relevant to the Graves loan, it is not relevant to a legitimate law enforcement inquiry. Dkt. No. 1, pp. 5-6. The FDIC established in its opposition brief that, in fact, its investigation concerns at least two suspect loans extended to customers of Crocker Financial. In addition, the Order of Investigation is broadly worded, directing the FDIC to investigate "whether any claims exist" due to illegal acts or omissions to act with respect to Bank United. Therefore, the court cannot conclude that the subpoena is not relevant to a legitimate law enforcement inquiry. Because the court has determined

6

that the subpoena is a valid agency subpoena in light of applicable law and the FDIC's stated purpose in issuing it, it is relevant to a legitimate law enforcement purpose.

**CONCLUSION**

Based on all of the foregoing, the court concludes that the subpoena is valid and enforceable as written, and the motion to quash is DENIED.

**IT IS SO ORDERED.**

Dated: April 11, 2012

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C11-80223 EJD Notice will be electronically mailed to:**

Frank Ubhaus          fru@berliner.com
Maurice Wainer        mrwainer@swmfirm.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**

8